UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM MOSLEY, #739875,

    Petitioner,

v.                                             CASE NO. 12-CV-13235
                                              HONORABLE MARK A. GOLDSMITH

SHIRLEE HARRY,

    Respondent.
_____/

**OPINION & ORDER**
**DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS (Dkt. 18), DENYING**
**A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN**
**FORMA PAUPERIS ON APPEAL**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner William Mosley ("Petitioner") was convicted of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), second-degree murder, Mich. Comp. Laws § 750.317, carjacking, Mich. Comp. Laws § 750.529a, armed robbery, § 750.529, third-degree fleeing and eluding, § 750.479a(3), and possession of a firearm during the commission of a felony, § 750.227b, as well as two counts of assaulting, resisting, or obstructing a police officer, § 750.81d(1), following a jury trial in the Wayne County Circuit Court. He was sentenced to concurrent terms of life imprisonment without parole on the first-degree murder conviction, 25 to 45 years imprisonment on the second-degree murder conviction, 20 to 45 years imprisonment on the carjacking conviction, 10 to 30 years imprisonment on the armed robbery conviction, 1 to 5 years imprisonment on the fleeing and eluding conviction, and 1 to 2 years imprisonment on each of the resisting and obstructing

convictions, as well as a consecutive term of 2 years imprisonment on the felony firearm conviction in 2009.

In his current pleadings, Petitioner raises claims concerning the admission of the victim's dying declaration, the admission of his own statement to police while hospitalized, and double jeopardy. Respondent has filed an answer to the petition contending that it should be denied. For the reasons that follow, the Court finds that Petitioner's claims lack merit and that the petition should be denied. The Court also concludes that a certificate of appealability and leave to proceed in forma pauperis on appeal should be denied.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner's convictions arise from a carjacking and shooting in Detroit, Michigan on August 16, 2008. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> On August 16, 2008, two men accosted Anthony Burns at gunpoint in his driveway and demanded the keys to his Maserati. Although Burns complied, he was nonetheless shot twice before the suspect with the firearm fled in the Maserati and the other suspect fled in an SUV. Police responded to the shooting and, based on Burns's descriptions, were able to locate the Maserati in a strip mall parking lot about three hours later. After officers unsuccessfully attempted to remove the driver from the Maserati, a high-speed chase ensued and concluded when the Maserati crashed into several parked cars. Defendant—who had been driving the Maserati and was the only person inside the vehicle—attempted to flee on foot before police subdued and arrested him. Notably, during the search of the vehicle, police found a handgun on the floorboard that was later determined to have discharged one of the bullet casings found at the scene of the robbery.
>
> Defendant was subsequently taken to the hospital to receive treatment for a broken leg. At the hospital, police obtained two important statements from defendant and Burns. First, defendant confessed that he was riding in the Maserati, but only after several acquaintances robbed the Maserati driver at gunpoint in his presence. Burns, however, identified defendant as the shooter from a photo array, although he was not "a hundred percent sure." Nearly two months after he was shot, Burns died from complications arising out of his gunshot wounds.

> At trial, defendant disputed this version of events and claimed that prior to the "little chase," an acquaintance had invited him to ride in a Maserati. It was only after the acquaintance went into a store and defendant noticed a man (whom defendant did not recognize as a police officer) with an assault rifle coming toward the Maserati that defendant fled the scene out of fear that he would be robbed. Apparently disbelieving defendant's assertions, the jury found defendant guilty of the aforementioned offenses.

People v. Mosley, No. 296269, 2011 WL 1600498, *1 (Mich. Ct. App. April 28, 2011) (unpublished).

Following his convictions and sentencing, Petitioner pursued an appeal of right with the Michigan Court of Appeals raising claims concerning the admission of a dying declaration, the admission of his statements to police while he was hospitalized, and double jeopardy. The court denied relief on the first two claims, but agreed that Petitioner's convictions for both first-degree murder and second-degree murder arising from the same death violated double jeopardy principles. The court vacated Petitioner's second-degree murder conviction, but otherwise affirmed his convictions. Id. at *1-4. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. People v. Mosley, 803 N.W.2d 349 (Mich. 2011).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I. The trial court's allowance into evidence testimony of statements and identification evidence as dying declarations of the non-testifying declarant was erred which deprived him of his constitutional rights of confrontation and due process rights to present a defense under the Sixth and Fourteenth Amendments to the United States Constitution.

II. The trial court's refusal to suppress the statements taken while he was in hospital - post-surgery and under medication - was clearly erroneous and an abuse of discretion which denied his Fifth Amendment right to be free from self-incrimination.

> III. Convictions for both first-degree murder and second-degree murder resulting from the death of a single individual are violated of double jeopardy protections. The second-degree murder must be reversed and the judgment of sentence modified to reflect one conviction of first-degree felony murder.

Respondent filed an answer to the petition contending that it should be denied because the first two claims lack merit and Petitioner received relief on the third claim in the state courts.

During the pendency of the case, Petitioner moved to hold his petition in abeyance and stay the proceedings so that he could return to the state courts and exhaust additional issues. The Court granted his request and stayed the proceedings in 2014. Petitioner returned to the state courts and exhausted seven new claims. He then moved the re-open this case and proceed on an amended petition, which included his original three claims and the seven additional claims. The Court granted his request and re-opened the case in 2016. Respondent filed an answer to the amended petition contending that the seven new claims were untimely under the one-year statute of limitations applicable to federal habeas actions. In response, Petitioner moved to voluntarily dismiss those additional claims and proceed on the claims contained in his original petition. The Court granted Petitioner's request and dismissed the seven new claims on January 22, 2018. The Court shall now proceed to address his remaining claim – those contained in his original habeas petition.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 et seq., sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)); see also Bell v. Cone, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413); see also Bell, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-521 (citations omitted); see also Williams, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Lindh, 521 U.S. at 333, n.7); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id.; see also White v. Woodall, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. Woods v. Etherton, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. Williams, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court")

6

(quoting Wright v. Van Patten, 552 U.S. 120, 125-126 (2008)); Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002); see also Mitchell, 540 U.S. at 16. The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. Parker v. Matthews, 567 U.S. 37, 48-49 (2012); see also Lopez v. Smith, _ U.S. _ 135 S. Ct. 1, 2 (2014). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003)); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

**A. Dying Declaration Claim**

Petitioner first asserts that he is entitled to habeas relief because the trial court erred and violated his confrontation rights by admitting the victim's statements and photo array identification of him as the perpetrator as a dying declaration. Alleged trial court errors in the

7

application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Serra v. Michigan Dept. of Corrections, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness" may it violate due process and warrant habeas relief. Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals denied relief on this claim finding that the evidence was properly admitted and did not violate Petitioner's confrontation rights. The court explained:

> In Crawford v. Washington, 541 U.S. 36, 68; 124 S Ct 1354; 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars testimonial hearsay unless the declarant was unavailable and was subject to prior cross-examination. However, as defendant concedes in his brief, our Court has held that dying declarations are admissible as an historical exception to the Confrontation Clause under Crawford and therefore pose no conflict with the Sixth Amendment. People v. Taylor, 275 Mich App 177, 183; 737 NW2d 790 (2007). Consequently, resolution of this issue hinges on whether Burns's statement qualified as a dying declaration under MRE 804(b)(2).
>
> That rule excepts as hearsay the statement of an unavailable declarant in the prosecution of a homicide where the declarant made the statement "believing that the declarant's death was imminent" and the statement "concern[ed] the cause or circumstances of what the declarant believed to be impending death." MRE 804(b)(2); see also People v. Siler, 171 Mich App 246, 251; 429 NW2d 865 (1988). Because defendant's challenge rests wholly on whether Burns believed his death was imminent, we need only address that part of the rule.
>
> The determination of whether a declarant believed that death was impending may be inferred from the surrounding circumstances. People v. Schinzel, 86 Mich App 337, 343; 272 NW2d 648 (1978), rev'd in part on other grounds 406 Mich 888 (1979). Thus, the apparent fatal quality of a wound as well as statements made to the declarant by the doctor or by others that his condition is hopeless are all relevant to prove a declarant's belief of impending death. Id., citing, McCormick, Evidence (2d ed), § 282, pp 680–681. Moreover, "it is not necessary for the declarant to have actually stated that he knew he was dying in order for the statement to be admissible as a dying declaration." Siler, 171 Mich App at 251.
>
> Instructive to our analysis is Webb v. Lane, 922 F.2d 390, 392 (CA 7, 1991). In that case, the Court found that the declarant's identification of the defendant from a photo array two days before the declarant's death satisfied the requirements of a dying declaration. Notably, the declarant in that case made the identification while attached to life support in a hospital due to six gunshot wounds causing major

8

> internal injuries. Additionally, the declarant was aware the doctor doubted his chances for survival and had communicated to his relatives, prior to the identification, that he believed he would die. The Court found that from these facts it was reasonable to infer the declarant knew about the seriousness of his condition and that death was imminent. Id. at 396
>
> Like the declarant in Webb, Burns was in the intensive care unit of the hospital suffering from two gunshot wounds, one of which caused paralysis from the waist down. At the time of the identification, a number of tubes and apparatuses were attached to Burns and he appeared in intense pain. Burns's wife was constantly present with him throughout this time and even Burns's pastor was called to the hospital for prayer. Additionally, just a few hours after making the identification Burns requested that his wife bring their children to him since he "would not see joy in the morning." (According to Burns's wife, this reference meant for her husband that he would not see his family again.) Considering the totality of these circumstances, it is reasonable to infer, as in Webb, that Burns was aware of the seriousness of his condition and that he believed death was imminent at the time of the identification even though he did not pass for some time after the statement. Therefore, the identification was properly admissible under MRE 804(b)(2) as a dying declaration, and the trial court did not err.

Mosley, 2011 WL 16004988 at *2 (footnotes omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, to the extent that Petitioner challenges the admission of the victim's statements and identification under the Michigan Rules of Evidence, he merely alleges a violation of state law which does not entitle him to federal habeas relief. See Walker v. Harry, 462 F. App'x 543, 545 (6th Cir. 2012); Wheeler v. Jones, 59 F. App'x 23, 28 (6th Cir. 2003). A federal court may grant an application for writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States. See 28 U.S.C. § 2254(a). Habeas relief does not lie for perceived errors of state law. Estelle, 502 U.S. at 67-68. State courts are the final arbiters of state law and federal courts will not intervene in such matters. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987); see also Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting on habeas review."); Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir. 2002). Petitioner is not entitled to habeas relief based upon a perceived violation of Michigan law concerning the admission of this evidence.

Second, Petitioner is not entitled to habeas relief on his claim that the admission of the evidence violated his confrontation or due process rights. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. See Davis v. Alaska, 415 U.S. 308, 315 (1973). The Sixth Amendment protections are not so broad, however, as to exclude the admission of certain hearsay statements against a criminal defendant despite his inability to confront the declarant at trial. Maryland v. Craig, 497 U.S. 836, 847-848 (1990). In Crawford v. Washington, 541 U.S. 36, 68 (2004), the United States Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause of the Sixth Amendment if the declarant is unavailable at trial and the defendant did not have a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable. The Supreme Court, however, indicated that dying declarations may be an historical exception to this rule. Id. at 56 n.6. The Supreme Court also confirmed that the rule of forfeiture by wrongdoing, i.e., that a defendant may not benefit from his wrongful prevention of a witness's future testimony, extinguishes confrontation claims on equitable grounds. Id. at 62; see also Mich. R. Evid. 804(b)(6).

The United States Supreme Court has yet to definitively rule on the status of dying declarations under the Confrontation Clause. See Michigan v. Bryant, 562 U.S. 344, 351, n.1 (2011); see also Walker, 462 F. App'x at 545-546 (explaining that "[i]n Crawford and again in Giles v. California, 554 U.S. 353, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008), the Supreme Court hinted that dying declarations may fall within an exception to the constitutional bar against testimonial hearsay"). Since Crawford, several courts have found a Confrontation Clause

10

exception for dying declarations, see, e.g., Kennedy v. Coleman, No. 1:15-cv-684, 2016 WL 7475649, *9 (S.D. Ohio Dec. 29, 2016); Duncan v. Bobby, No. 1:07 CV 839, 2008 WL 111229, *8 (N.D. Ohio Jan. 8, 2008); People v. Taylor, 737 N.W.2d 790 (2007), but some have not, see, e.g., United States v. Jordan, No. 04-CR-229-B, 2005 WL 513501, *3 (D. Colo. March 3, 2005). Most courts have concluded that the issue is unresolved. See, e.g., Walker, 462 F. App'x at 545-546; Martin v. Fanies, 365 F. App'x 736, 739 (5th Cir. 2010); United States v. Littlesun, 444 F.3d 1196, 1199 (9th Cir. 2006); Taylor v. Prelesnik, No. 09-cv-14214, 2011 WL 4694055, *3-4 (E.D. Mich. Oct. 5, 2011) (citing cases). This Court agrees that the issue remains unresolved by the Supreme Court. Consequently, Petitioner cannot prevail on this claim as he cannot establish that the state court's decision is contrary to or an unreasonable application of clearly-established Supreme Court precedent. A state court cannot act unreasonably under AEDPA if the Supreme Court has not decided a question. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (reversing grant of habeas relief because Supreme Court precedent provided "no clear answer to the question presented"); Walker, 462 F. App'x at 545-546; Taylor, 2011 WL 4694055 at *3 (citing cases).

Moreover, several courts, including the United States Court of Appeals for the Sixth Circuit, have recognized the continuing viability of forfeiture by wrongdoing doctrine. See, e.g., United States v. Garcia-Meza, 403 F.3d 364, 370 (6th Cir. 2005) (upholding admission of murder victim's police statement about defendant's prior abuse); Mayhew, 380 F. Supp. 2d at 966-968 (admitting victim's dying declaration). Given that the victim was unable to testify at trial due to Petitioner's wrongful conduct, it cannot be said that the admission of his statements and identification of Petitioner as the perpetrator violated due process or otherwise rendered Petitioner's trial fundamentally unfair. Habeas relief is not warranted on this claim.

### B. Hospital Statement Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred and violated his right to be free from self-incrimination by refusing to suppress the statements that he made to the police while he was hospitalized and instead admitting those statements into evidence at trial.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. Colorado v. Connelly, 479 U.S. 157, 163-164 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." McCall v. Dutton, 863 F.2d 454, 459 (6th Cir. 1988). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." Miller v. Fenton, 474 U.S. 104, 112 (1985). Those circumstances include: (1) police coercion (a "crucial element"), (2) length of interrogation, (3) location of interrogation, (4) continuity of interrogation, (5) suspect's maturity, (6) suspect's education, (7) suspect's physical and mental condition, and (8) whether the suspect was advised of Miranda rights. Withrow v. Williams, 507 U.S. 680, 693-694 (1993).

All of the factors should be closely scrutinized, Culombe v. Connecticut, 367 U.S. 568, 602 (1961), but without coercive police activity, a confession should not be deemed involuntary. See Connelly, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). To constitute coercion, the police conduct must overbear the suspect's will to resist. Ledbetter v. Edwards, 35 F.3d 1062, 1067 (6th Cir. 1994) (citing Beckwith v. United States, 425 U.S. 341, 347-348 (1976)). An involuntary confession may result from psychological, as well as physical, coercion or

pressure by the police. Arizona v. Fulminante, 499 U.S. 279, 285-289 (1991). A petitioner has the burden of proving that a statement is involuntary. Boles v. Foltz, 816 F.2d 1132, 1136 (6th Cir. 1987).

The Michigan Court of Appeals denied relief on this claim finding that Petitioner's statements to the police at the hospital were voluntary and properly admitted. The court explained:

> A statement obtained from a defendant during a custodial interrogation is admissible only if the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights." Id. at 564, citing Miranda v. Arizona, 384 U.S. 436, 444; 86 S Ct 1602; 16 L.Ed.2d 694 (1966). The confession must be made without intimidation, coercion, or deception and must be the product of an essentially free and unconstrained choice. People v. Daoud, 462 Mich 621, 633; 614 NW2d 152 (2000); People v. Cipriano, 431 Mich 315, 333–334; 429 NW2d 781 (1988). In determining the voluntariness of a confession, we consider the following nonexhaustive list of factors, although no one factor is dispositive:
>
>> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [Cipriano, 431 Mich at 334.]
>
> Defendant claims his confession was involuntary because the interrogating officer exploited his condition, which—as he testified at the Walker hearing—was weakened by medications and injuries. The interrogating officer, however, testified that defendant appeared coherent during the interrogation, that there was no indication that he was under any influence of narcotics or drugs, and that defendant had no trouble reading over his statement and affixing his initials to the waiver of rights form. Further, defendant made no indication to the officer concerning any residual injuries from his arrest. The trial court apparently believed the officer's account of events as opposed to defendant's, and the trial court's credibility determinations were not clearly erroneous. People v. Tierney, 266 Mich App 687, 708; 703 NW2d 204 (2005). And in any event, whether a defendant is under the influence of drugs is not necessarily dispositive in the determination of

> whether his confession was voluntary. People v. Dunlap, 82 Mich App 171, 176; 266 NW2d 637 (1978). As defendant raises no further challenge to the voluntariness of his confession, we find no error in the trial court's decision.

Mosley, 2011 WL 16004988 at *3 (footnote omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, there is no evidence of coercion by the police officer who questioned Petitioner at the hospital. Second, the other circumstances of the interview indicate that Petitioner's statement was voluntary. Petitioner was advised of his constitutional rights and initialed a waiver form. See 8/3/09 Trial Tr. at 76-77, PageID.404-405 (Dkt 10-6). The interrogation only lasted for about 30 minutes and was conducted in Petitioner's hospital room. Id. at 74, 94, PageID.402, 422. Petitioner was 18 years old, could read and write, and had an eleventh grade education at the time of the interview. Id. at 78, PageID.406.

While Petitioner claims that he was in pain and sleepy from surgery and medication, Police Officer Detrick Mott testified otherwise. Officer Mott testified that Petitioner, whom he knew personally, did not appear to be under the influence of narcotics or drugs when questioned. Id. at 79, PageID.407. Rather, Petitioner was coherent and appeared to understand the questions and responded appropriately. Id. at 78-80, PageID.406-408. Petitioner said he understood his constitutional rights and initialed a constitutional rights form, and answered questions about his name, address, height, weight, family, marital status, and education without any difficulty. Id. at 76-80, PageID.404-408. Petitioner went on to describe the shooting and gave an exculpatory statement claiming that he was merely present at the scene. Id. at 99, PageID.427. Officer Mott observed that Petitioner had a broken leg and knew that he had been in a crash, but acknowledged that he never spoke to medical personnel about Petitioner's condition. Id. at 85-86, PageID.413-414. Officer Mott testified that Petitioner never said that he was in pain or sleepy from medication. Id. at 92, PageID.420. The state court found Officer Mott's testimony to be credible.

That credibility determination is entitled to deference and presumed correct on federal habeas review. Miller, 474 U.S. at 112. Petitioner fails to overcome that presumption with clear and convincing evidence.

Moreover, while Petitioner was recovering from the car chase/crash and resulting injuries, possibly in some pain and medicated at the time of the interview, such factors alone are insufficient to find that his hospital statement was involuntary. See Abela v. Martin, 380 F.3d 915, 928 (6th Cir. 2004) (ruling that petitioner's statements were voluntary even though he was hospitalized with a broken nose, in pain, on pain medication, and had been intoxicated), abrogated on other grounds by Guilmette v. Howes, 624 F.3d 286 (6th Cir. 2010); United States v. Newman, 889 F.2d 88, 94 (6th Cir. 1989) ("Evidence that a defendant suffered...from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary....some element of police coercion is always necessary."). There is simply no evidence of police coercion.

In sum, Petitioner fails to establish a violation of his constitutional rights. The record before this Court supports the state court's finding that Petitioner's police statement, taken while he was hospitalized, was voluntary. The state court's decision was reasonable and neither contrary to Supreme Court precedent nor an unreasonable application thereof or of the facts. Habeas relief is not warranted on this claim.

**C. Double Jeopardy Claim**

Lastly, Petitioner asserts that he is entitled to habeas relief because his convictions for both first-degree murder and second-degree murder arising from the same death violate double jeopardy principles. The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause provides three basic protections: "[It] protects against a

second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (footnotes omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." Shiro v. Farley, 510 U.S. 222, 229 (1994) (citing United States v. Wilson, 420 U.S. 332, 339 (1975)).

On direct appeal, the State conceded this error. The Michigan Court of Appeals agreed and vacated the second-degree murder conviction. Mosley, 2011 WL 1600498 at *4. The Michigan Court of Appeals' ruling "fully vindicated [Petitioner's] double jeopardy rights." Jones v. Thomas, 491 U.S. 376, 382 (1989). This claim is therefore moot as "there is no effective relief available in federal court that [Petitioner] has not already received in state court." Friedman's Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002). Habeas relief is not warranted on this claim.[1]

## IV. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court denies and dismisses with prejudice the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies relief on the merits, the substantial showing threshold is met

---

[1] The Court notes that the second-degree murder conviction is still listed on Petitioner's Offender Profile. See Michigan Department of Corrections Offender Tracking Information System ("OTIS"), http://mdocweb.state.mi.us/otis2profile.aspx?mdocNumber=739875. In his response brief, Respondent states that she is taking steps to correct this issue and ensure that the second-degree murder conviction is removed from Petitioner's records.

16

if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claims debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Petitioner fails to make a substantial showing of the denial of a constitutional right. Accordingly, the Court denies a certificate of appealability. The Court also denies Petitioner leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. See Fed. R. App. P. 24(a).

SO ORDERED.

Dated: August 8, 2018  
     Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 8, 2018.

s/Karri Sandusky  
Case Manager